*In re* J.J.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J.J.M., Respondent-Appellant).

Second District    No. 2—97—0244

Opinion filed October 16, 1998.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Jay Wiegman, of Somonauk, for appellant.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RAPP delivered the opinion of the court:

The minor respondent, J.J.M., born November 15, 1980, appeals the final dispositional order of the circuit court committing him to the Department of Corrections, Juvenile Division (DOC), for an indeterminate term. Following his motion to reconsider the order of commitment, respondent timely appeals, arguing that the trial court committed reversible error in denying his request to order that he be given credit for time previously served and good time credit against his term of commitment to the DOC. We affirm.

On August 8, 1996, the State filed a petition to adjudicate respondent a delinquent minor and to make him a ward of the court. The State alleged that, on August 4, 1996, respondent committed aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(1) (West 1996)), a Class 1 felony. The petition alleged that the respondent knowingly and without legal authority discharged a firearm into a building located at Clifford Court in Elgin, Illinois. At the adjudicatory hearing on November 21, 1996, the court admonished respondent of his rights. Respondent admitted the allegations in the petition, and the court adjudicated him a delinquent minor.

The dispositional hearing began on January 23, 1997. Respondent presented the testimony of Dale Tucker, a counselor at the Kane County Youth Home where respondent had been detained for about two months. Tucker testified that respondent's conduct was appropri-

ate while at the youth home. Although respondent associated with gang members, he told Tucker he wanted to avoid gangs. Marty Offut, a Kane County probation officer, testified regarding respondent's satisfactory completion of an informal period of supervision that arose out of a 1994 burglary. Respondent's aunt testified regarding, among other things, respondent's difficult family life, his mother's drinking, her abusive boyfriend, respondent's lack of parental supervision, and the aunt's care of him.

Detective James Picardi of the Elgin police department testified regarding his investigation of the August 4, 1996, incident during which witnesses observed respondent fire three gunshots into the door of an apartment at Clifford Court that was occupied by several persons. One of the bullets penetrated the door.

Detective Douglas Anderson of the Beloit, Wisconsin, police department testified that he arrested respondent during an incident in Beloit in April 1996 during which the police determined that respondent was wanted on an outstanding Wisconsin warrant. The police had responded to a barking dog complaint. The police found respondent at the residence, which contained weapons, including an AK47 assault rifle, and marijuana, cash, and drug paraphernalia.

The trial court found *inter alia* that it was in the best interests of the minor respondent and the public that he be made a ward of the court. The trial court ordered him committed to the DOC for an indeterminate term. The court denied respondent's request for 78 days of credit for time previously served in the county youth home. The trial court stated that it would note in its order the number of days respondent had spent in predisposition detention. The court also commented in passing that it did not believe it could order the DOC to grant "good time."

On February 25, 1997, the trial court denied respondent's motion to reconsider his request for the 78 days' credit. The court drew a distinction between time spent in detention at the youth home and confinement in the DOC and concluded that it had no authority to grant the credit for time served in this instance. The court recognized that section 5—23(1)(a)(5) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5—23(1)(a)(5) (West 1996)) provides that, where a court's dispositional order places a minor in detention (for a period not exceeding 30 days), the "minor shall be given credit on the dispositional order of detention for time spent in detention" under enumerated sections of the Act "as a result of the offense for which the dispositional order was entered." However, the court pointed out that the Act is silent regarding an award of credit for time served against a term of commitment in the DOC. We agree that there was

no legal authority for the trial court to order that credit be given against respondent's term of commitment in the DOC.

■■ Respondent first argues that, like adult offenders, he is entitled to receive credit (78 days) against the maximum term of "incarceration" for time spent in predispositional custody at the youth home as a result of the offense for which the subsequent "sentence" was imposed. Respondent relies on the provisions of section 5—8—7(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—8—7(b) (West 1996)) which state, in pertinent part:

"The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed, at the rate specified in Section 3—6—3 of this Code."

In a criminal proceeding, this statutory provision governs the calculation of the term of imprisonment of an offender sentenced as an adult. In arguing that a juvenile's disposition should be treated like an adult offender's sentence, respondent also relies on section 1—2(3)(a) of the Juvenile Court Act, which states that the "procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors." 705 ILCS 405/1—2(3)(a) (West 1996).

■ In treating his commitment as equivalent to an adult offender's sentence in a criminal proceeding, respondent's legal argument for granting the credit rests on a faulty premise. There is no question that the overriding purpose of the Act is to ensure that the best interests of the minor, the minor's family, and the community are to be served; the proceedings under the Act are not criminal. *In re W.C.*, 167 Ill. 2d 307, 320 (1995). "Delinquency proceedings are therefore protective in nature and the purpose of the Act is to correct and rehabilitate, not to punish." *W.C.*, 167 Ill. 2d at 320; *In re R.G.*, 283 Ill. App. 3d 183, 186 (1996).

While juvenile delinquency proceedings are not criminal, the minor is nevertheless accorded certain due process safeguards such as the right to counsel, the right to confront witnesses, and the right to remain silent; the criminal rules of evidence and the reasonable doubt standard of proof apply. *R.G.*, 283 Ill. App. 3d at 186. However, not all criminal safeguards are employed in a juvenile proceeding. For example, a minor has no right to a jury trial, in part because a jury trial would invest a juvenile proceeding with the appearance and form of a criminal trial; and the speedy trial provisions of criminal proceedings do not apply to juvenile proceedings. *R.G.*, 283 Ill. App. 3d at 186.

■ Under the Juvenile Court Act, a minor is not treated as a crim-

inal, the adjudication is not treated as a conviction, and, before trial, the minor is not deemed to be held "in custody" for an alleged offense. Rather, the minor is held in "detention" under circumscribed conditions such as when the court finds detention necessary for the protection of the minor or for the protection of property, or where the minor is likely to flee the jurisdiction; there is no bail provision for the minor to avoid detention. *People v. Woodruff*, 88 Ill. 2d 10, 15-16 (1981). The Act carefully avoids the terms "criminal conviction" and "sentence" and instead uses the terms "adjudication" and "disposition" (see 705 ILCS 405/5—20, 5—22 (West 1996)); these are not merely formal distinctions. *People v. Thompson*, 229 Ill. App. 3d 606, 609 (1992). A minor under 17 years of age may not be prosecuted criminally as an adult except under very limited circumstances. See 705 ILCS 405/5—4 (West 1996).

■ When a delinquent has been adjudged a ward of the court, the court may commit him to the DOC if it finds that "(a) his parents, guardian, or legal custodian are unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement" in other statutorily enumerated forms of custody or guardianship; or "(b) it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent." 705 ILCS 405/5—33(1) (West 1996).

■ The commitment of a delinquent to the DOC is for an indeterminate term that automatically terminates "upon the delinquent attaining the age of 21 years unless the delinquent is sooner discharged from parole or custodianship is otherwise terminated in accordance with this Act or as otherwise provided for by law." 705 ILCS 405/5—33(2) (West 1996). This provision has been interpreted to give the DOC discretion to decide when it will release a delinquent minor ward consistent with the goal of rehabilitation. See *In re T.L.B.*, 184 Ill. App. 3d 213, 220 (1989) (reciting legislative history and concluding that indeterminate term for juvenile delinquents survives equal protection scrutiny).

Furthermore, juveniles are accorded favorable treatment not normally available to adult criminal defendants. For example, a delinquent ward is committed to the DOC for an indeterminate term not to exceed his twenty-first birthday unless sooner discharged, and he has the continuous opportunity to seek early release; he incurs no criminal record or disqualification from holding public office. *T.L.B.*, 184 Ill. App. 3d at 221, 223; *In re T.D.*, 81 Ill. App. 3d 369, 372-73 (1980). While the purposes of the Juvenile Court Act are protective and

rehabilitative, by contrast, the purpose and policy of the Unified Code are designed to be punitive as well as rehabilitative. *Thompson*, 229 Ill. App. 3d at 609.

Even though a delinquency proceeding retains certain adversarial aspects, it is not in the usual sense an adversarial proceeding, but is one to be administered in a spirit of humane concern for and to promote the welfare of the minor. *W.C.*, 167 Ill. 2d at 320. Delinquency proceedings are separated into an adjudicatory stage, which includes certain adversarial aspects and thus must satisfy due process, and a dispositional stage, where the court determines whether it is in the best interests of the minor and the public that he become a ward of the court. *W.C.*, 167 Ill. 2d at 325-26. Nonetheless, the application of such due process safeguards does not transform delinquency proceedings into criminal proceedings. *W.C.*, 167 Ill. 2d at 321.

In sum, adult offenders and juveniles adjudicated delinquents are not " 'similarly circumstanced,' " and "it is not the purpose of the Illinois Criminal Code and Juvenile Court Act to treat them as similarly circumstanced." *T.D.*, 81 Ill. App. 3d at 372. Because proceedings under the Juvenile Court Act are not criminal, and juvenile offenders are not considered criminals, do not suffer the consequences of a conviction, and are not given "sentences" as in criminal proceedings, we hold that the credit-against-sentence provision of section 5—8—7(b) of the Unified Code does not apply to a case such as this one where a juvenile delinquent ward has been committed for an indeterminate term in the DOC. Section 1—2(3)(a) of the Act, which provides that procedural rights assured to minors be the same as those enjoyed by adults unless specifically precluded by laws enhancing the protection of minors, does not require a different result. See *Woodruff*, 88 Ill. 2d at 20 (finding adult speedy trial provisions inapplicable to juveniles in view of special protections and benefits afforded them).

This case does not concern the diminution of the minor respondent's procedural rights, but concerns instead the propriety of the trial court's substantive disposition in providing for the protection, care, and rehabilitation of the minor in accordance with the Juvenile Court Act. A decision contrary to the one we have reached today would only serve to blur the important and useful distinctions that exist between juvenile proceedings and criminal proceedings. To the extent that the Appellate Court, Fourth District, appears to have reached a contrary conclusion based on somewhat different facts, we decline to follow its decision in *In re E.C.*, 297 Ill. App. 3d 177 (1998).

Somewhat curiously, respondent also argues that the court erred in refusing to order that he be given "good-time" credit against

his indeterminate term of commitment. This issue was not fully developed in the trial court, but we will address it nevertheless. See *W.C.*, 167 Ill. 2d at 342 (declining to apply waiver rule). Again, respondent cites authority from the Unified Code providing a "good behavior" allowance to persons sentenced to a fixed term in a county jail which allowance is subject to revocation by the warden as permitted by statute. 730 ILCS 130/3 (West 1996). That authority is also inapplicable to the facts of this case. Respondent then points out that the "courts have no authority to interfere with the allowance." *In re N.R.*, 172 Ill. App. 3d 14, 16 (1988). Our review of the record shows that the trial court did in fact consider its lack of authority and scrupulously sought to avoid interfering with the discretion of the DOC to determine what credits, if any, would be applied to shorten respondent's term of commitment. We conclude, as did the trial court, that the court was without legal authority to order day-for-day good-conduct credit because respondent was being committed to the Department of Corrections, Juvenile Division, for an indeterminate term. See *People v. Bridges*, 188 Ill. App. 3d 961, 971 (1989) (where day-for-day good-time credit could not be calculated).

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.