Docket No. 98492.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* J.T., a Minor (The People of the State of Illinois, Appellant, v. J.T., Appellee).

*Opinion filed April 20, 2006.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices McMorrow, Fitzgerald, and Garman concurred in the judgment and opinion.

Justice Kilbride concurred in part and dissented in part, with opinion.

Justice Freeman dissented, with opinion.

## OPINION

The respondent, J.T., admitted having committed the offense of criminal damage to property and was sentenced to 18 months' probation. His probation was subsequently revoked and he was committed to the Illinois Department of Corrections, Juvenile Division (DOC), for an indeterminate term. On appeal, J.T. argued, *inter alia*, that the circuit court of Cook County had failed to properly admonish him pursuant to Supreme Court Rule 605 (188 Ill. 2d R. 605) when it sentenced him to probation. The appellate court agreed and remanded the cause to the trial court for proper admonitions. The State, as appellant, argues that the appellate court was without

jurisdiction to hear any issue regarding J.T.'s guilty plea and sentence. We agree and vacate the judgment of the appellate court.

## I. BACKGROUND

On August 6, 2001, the State filed a petition for adjudication of wardship against J.T., alleging that J.T. had committed the offense of criminal damage to property. Following a conference pursuant to Supreme Court Rule 402 (177 Ill. 2d R. 402), J.T. agreed to plead guilty in exchange for a sentence of probation. After admonishing J.T. of the consequences of pleading guilty, the trial court accepted the plea, entered a finding of delinquency, and continued the case for sentencing.

On January 11, 2002, J.T. was sentenced to 18 months' probation. The conditions of his probation included making restitution, attending TASC counseling, and attending school on a regular basis. The trial court then admonished J.T. about his right to appeal:

> "THE COURT: So also you have the right to appeal. If within the next thirty days–this starts the thirty-day period of grace between us–if within the next thirty days you become unhappy with the penalty I have imposed on you, you have the right to appeal to a higher court, to the appellate court, the court that supervises me.
>
> If you want to go up to that court, there is a procedure you have to follow. You first have to file a petition before me asking me to allow you to withdraw your admission. You file a petition saying you want to take everything back.
>
> If I agree with your petition, I will strike out this penalty. I will strike out the fact that you entered the plea of guilty. I will strike out the finding of guilty and you will have to start all over by going to trial before me. That's the second chance that the law provides; but if I disagree with your petition and say, no, everything was done well. This is what we are supposed to leave it that way. Then it will go up to the higher court and they will look at everything.
>
> They will take this record this lady is typing up or transcribing and they will read everything that was said in the courtroom by the attorneys, by you, by me, to see whether or not your rights were violated in any way.

Do you understand that?

[J.T.]: Yes, your Honor.

THE COURT: All right. Very well. So—and they will look it over for you and also if you go up on appeal and you are unable to hire an attorney to represent you, the Court will appoint an attorney for you free of charge. That's your right to have an attorney if you can't afford one. Also, we will provide you with a free copy of the transcript. Do you understand me, [J.T.]?

[J.T.]: Yes, your Honor.

THE COURT: All right. Appeal rights are given. Any question about your appeal rights?

[J.T.]: No."

J.T. filed neither a motion to withdraw his guilty plea nor a notice of appeal.

On March 27, 2002, the State filed a petition for supplemental relief alleging that J.T. had violated the conditions of his probation by failing to attend school on numerous occasions, and that he had committed several other substantive offenses. Following an evidentiary hearing, the trial court found that J.T. had violated his probation by failing to attend school on nine separate occasions. A dispositional hearing was held on December 13, 2002. Kevin Morgan, J.T.'s probation officer, testified that J.T. was not enrolled in school, had not paid the restitution, and had missed many of his TASC evaluation appointments. Morgan further testified that J.T. was not a candidate for intensive probation services because of his lack of cooperation. The trial court found that given J.T.'s history of delinquency, his parents' unwillingness to cooperate and their inability to control him, and his repeated failure to cooperate, it was in the community's best interest that it be protected from J.T.'s criminal behavior and that he be committed to the DOC.

On appeal, J.T. argued, *inter alia*, that when the trial court sentenced him to probation, it failed to properly admonish him in accordance with Rule 605(b) (188 Ill. 2d R. 606(b)), and that the cause should be remanded so that he could file a motion to withdraw his admission and receive proper admonishments. J.T. acknowledged that he did not file a written motion to withdraw his plea or a notice of appeal, but argued that because juveniles have no right to

postconviction relief, the appellate court should consider the merits of his claims in the interest of fairness.

The State filed a motion to strike this argument, arguing that because J.T. did not file a timely notice of appeal, the appellate court was without jurisdiction to hear any issues relating to J.T.'s guilty plea. Following its previous decision in *People v. Johnson*, 332 Ill. App. 3d 81 (2002), the appellate court held that where the trial court has failed to give proper admonitions, the judgment may be attacked at any time.

After noting that Rule 605(c) rather than Rule 605(b) applied because J.T. was sentenced pursuant to a negotiated plea, the appellate court found that the admonishments given by the trial court failed to substantially comply with the requirements of Rule 605(c). Specifically, the court found that the trial court failed to advise J.T. that: (1) he could have an attorney assist him in the preparation of postplea motions; (2) he was required to set forth the grounds for the withdrawal of admission to the petition in the motion to withdraw; and (3) he waived any grounds he did not raise in the motion; and (4) the State could reinstate any charges against him that were dismissed as part of the plea negotiations.

Based on this finding and following its previous decision in *People v. Johnson*, 332 Ill. App. 3d 81 (2002), the appellate court remanded the cause to the circuit court so that J.T. could be properly admonished in accordance with Rule 605(c), and given the opportunity to file a motion to withdraw his admission to the petition under Rule 604(d). 347 Ill. App. 3d 533. We granted the State's petition for leave to appeal (177 Ill. 2d R. 315), and J.T. cross-appeals.

## II. ANALYSIS

### A. Appellate Jurisdiction

J.T. now concedes that the appellate court's rationale for holding that a defendant may attack the judgment at any time when the trial court has failed to give proper admonitions was rejected in *People v. Jones*, 213 Ill. 2d 498 (2004), which overruled *Johnson* to the extent that it was inconsistent therewith on this issue.

In *Jones*, the defendant entered a negotiated plea of guilty to murder and was sentenced to 20 years' imprisonment. His *pro se*

postconviction petition alleging ineffective assistance of counsel was summarily dismissed. On appeal from the dismissal, the defendant argued for the first time that the trial court had failed to properly admonish him pursuant to Rule 605 when it entered judgment on his guilty plea. The appellate court held that the defendant could not raise the issue of improper admonitions on appeal because he had failed to raise it in his petition. On appeal to this court, the defendant conceded that he had not included this issue in his petition, but argued, *inter alia*, that because the improper admonitions were akin to a void judgment, it could be raised at any time. We rejected this argument, holding that while the giving of improper admonitions constitute error, it does not divest the circuit court of jurisdiction such that the conviction and sentence were rendered void. *Jones*, 213 Ill. 2d at 509, citing *People v. Davis*, 156 Ill. 2d 149, 156 (1993).

While the appellate court's determination in this case that a conviction and sentence entered in the absence of proper Rule 605(b) admonitions can be attacked at any time because it is akin to a void judgment is clearly incorrect under *Jones*, it suffers from a more fundamental flaw–the appellate court lacked jurisdiction to consider the admonishment issue. In noncapital cases an appeal is perfected by the timely filing of a notice of appeal, and it is this step which vests the appellate court with jurisdiction. 188 Ill. 2d R. 606(a). Except as provided in Rule 604(d), the notice of appeal must be filed with the clerk of the court within 30 days after the entry of the final judgment appealed from, or, if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of that motion. 188 Ill. 2d R. 605(b). Rule 604(d) requires that in order to appeal from a judgment entered upon a plea of guilty, a defendant must first file in the trial court a written motion to either withdraw his guilty plea or reconsider the sentence. 188 Ill. 2d R. 604(d). In such cases, the notice of appeal must be filed within 30 days of the denial of that motion. 188 Ill. 2d R. 605(b). The appellate court may also allow the filing of a late notice of appeal. 188 Ill. 2d R. 606(c).

In the present case, J.T. did not file a timely notice of appeal from the order sentencing him to probation, a written motion to either withdraw his plea or reconsider his sentence, or a motion for leave to file a late notice of appeal. Consequently, the appellate court had no jurisdiction to consider any issues arising from either his guilty plea or his sentence. *People v. Nordstrom*, 37 Ill. 2d 270 (1967).

˘5˘

## B. Supervisory Relief

As noted above, J.T. concedes that the rational for the appellate court's decision is no longer viable in light of *Jones.* He argues, however, that fundamental fairness requires this court to exercise its supervisory authority and either remand the cause to the trial court for proper Rule 605(b) admonitions, direct the appellate court to allow him to file a late notice of appeal, or hold that he can litigate this issue in a postconviction proceeding.

Article VI, section 16, of our constitution vests this court with supervisory authority over all the lower courts of this state. Ill. Const. 1970, art. VI, §16. Supervisory orders are disfavored and, as a general rule, this court will issue a supervisory order only if the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice, or where intervention is necessary to keep an inferior court or tribunal from acting beyond the scope of its authority. *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510 (2001).

In considering the question of whether J.T. was prejudiced or denied real justice and therefore that "fundamental fairness" requires the court to grant supervisory relief, we find the rationale of *People v. Henderson*, No. 98887 (August 18, 2005), persuasive. In *Henderson*, we found that the defendant was not prejudiced by the trial court's improper admonitions concerning the steps necessary to challenge his sentence on appeal because he raised no sentencing issues on appeal.

Here, J.T. was admonished by the trial court, at the time he was placed on probation, that he had 30 days in which to appeal, and that if he wished to appeal he first had to file a petition with the trial court "to take everything back." While these admonitions did not strictly comply with Rule 605(c), they were sufficient to put J.T. on notice that he could challenge his guilty plea, and that some action on his part within 30 days was necessary if he wished to appeal. J.T. took no action whatsoever, even though he appeared in court five times with counsel after he was placed on probation and before he was committed to the DOC. He did not file any pleading evidencing an intention to "take everything back," he did not file a notice of appeal, nor did he seek leave to file a late notice of appeal. It was not until his probation was revoked and he was sentenced to the DOC that J.T.

took any action to challenge his guilty plea or the conviction and sentence entered thereon.

Further, the record demonstrates that J.T. is familiar with the criminal justice system. J.T. had nine previous station adjustments, 19 court referrals which included three findings of delinquency, five periods of probation, and six violations of probation. Moreover, J.T. was represented by counsel at the time he pled guilty and was sentenced to probation.

J.T's argument that because of the faulty admonition he was unaware of his right to appeal or the steps necessary to preserve and exercise that right are unpersuasive. Rather, we conclude that he chose not to appeal because he was satisfied with his sentence. This is not a case where the normal appellate process cannot provide adequate relief, nor does it involve an issue important to the administration of justice. The normal appellate process could have provided adequate relief had J.T. availed himself of it. Having chosen not to, J.T. is in no different position than any other defendant who chooses not to file an appeal. Under these circumstances, supervisory relief is not warranted.

Alternatively, J.T. requests this court to exercise its supervisory authority and address the issue of whether juveniles can seek relief under the Post-Conviction Hearing Act (725 ILCS 5/122–1 *et seq.* (West 2004)). We decline to do so for the same reasons we declined to address this issue in *In re William M.*, 206 Ill. 2d 595 (2003). As in *William M.*, the parties offer minimal argument on this issue. As Justice Kilbride noted in his special concurrence in that case, "[a] question of such magnitude should be fully briefed and argued by opposing parties zealously advocating the relevant arguments prior to its definitive resolution by this court." *William M.*, 206 Ill. 2d at 607-08 (Kilbride, J., specially concurring).

### C. Sentencing

In his cross-appeal, J.T. argues that if he remained incarcerated until his twenty-first birthday, as permitted under section 5–750(3) of the Juvenile Court Act (705 ILCS 405/5–750(3) (West 2002)), he would have served a sentence greater than that which an adult would have had to serve for the same offense, in violation of section 5–710(7) (705 ILCS 405/5–710(7) (West 2002)). He urges this court

to exercise its supervisory authority and order the trial court to modify its dispositional order to provide that the maximum time he could spend in the custody of the DOC was three years. J.T. concedes that because he was released to the custody of his parents on March 19, 2003, and discharged from parole on May 28, 2004, this issue is moot. He argues, however, that this court should nevertheless address the issue under certain exceptions to the mootness doctrine.

It is a basic tenet of justiciability that reviewing courts will not decide moot or abstract questions or render advisory opinions. *People ex rel. Sklodowski v. State*, 162 Ill. 2d 117, 130 (1994), quoting *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990). An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party. *In re Tekela*, 202 Ill. 2d 282, 292-93 (2002). A reviewing court may nevertheless review an otherwise moot issue pursuant to the public interest exception to the mootness doctrine. *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997). Application of the public interest exception requires (1) the existence of a question of public importance; (2) the desirability of an authoritative determination for the purpose of guiding pubic officers in the performance of their duties; and (3) the likelihood that the question will recur. *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003). Another exception to the mootness doctrine exists for cases involving events of short duration that are " ' "capable of repetition, yet evading review." ' " *In re A Minor*, 127 Ill. 2d 247, 258 (1989), quoting *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 236 (1980), quoting *Sosna v. Iowa*, 419 U.S. 393, 399-400, 42 L. Ed. 2d 532, 540, 95 S. Ct. 553, 557 (1975). For this exception to apply, there must be a reasonable expectation that the same complaining party would be subject to the same action again and the action challenged must be of such short duration that it cannot be fully litigated prior to its cessation. *In re India B.*, 202 Ill. 2d 522, 543 (2002). These exceptions are to be construed narrowly and require a clear showing of each criterion to bring the case within the terms. *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999).

Neither exception applies in this case. The exception for cases of short duration evading review does not apply because it is unlikely that J.T. will be subject to the same action again. Even if he were, he

could obtain review by filing a timely notice of appeal. With respect to the public interest exception, we agree that the question of how long a minor will remain incarcerated in the DOC, or subject to parole restrictions or the custodianship of the DOC, is a question of public importance, but conclude that there is no need for an authoritative determination for the purpose of guiding pubic officers in the performance of their duties. Cases addressing this issue have uniformly held that dispositional orders must include a limitation on the period of commitment so that it does not exceed the maximum period of incarceration for an adult committing the same offense. See *In re K.S.*, 354 Ill. App. 3d 862, 864 (2004); *In re S.M.*, 347 Ill. App. 3d 620, 627 (2004); *In re C.L.P.*, 332 Ill. App. 3d 640, 645 (2002); *In re Jesus R.*, 326 Ill. App. 3d 1070, 1072 (2002). Consequently, we decline to employ the public interest exception to reach this issue.

Finally, J.T. argues that he is entitled to a 31-day credit for time spent in custody prior to his commitment to the DOC. Again, because J.T. has already been discharged from probation, this issue is moot. Unlike the previous issue, however, there is a conflict among the districts of our appellate court on this issue, and we will therefore address it pursuant to the public interest exception.

In *In re E.C.*, 297 Ill. App. 3d 177, 180 (1998), the Fourth District held that a juvenile who is sentenced to an indeterminate term is entitled to predisposition credit. In *In re J.J.M.*, 299 Ill. App. 3d 327 (1998), however, the Second District declined to follow *E.C.*, holding that proceedings under the Act were not criminal and that juvenile offenders were not given "sentences" as in criminal proceedings. *In re J.J.M.*, 299 Ill. App. 3d at 330-32.

In *Jesus R.*, the Fourth District reaffirmed its holding in *E.C.* The court specifically declined to follow *J.J.M.*, noting that the Act itself referred to provisions of the Unified Code of Corrections to determine proper terms of juvenile commitment to the DOC and afforded juveniles the same procedural protections as adult criminals. *In re Jesus R.*, 326 Ill. App. 3d at 1073-74.

In *In re Jermaine J.*, 336 Ill. App. 3d 900 (2003), the Third District agreed with the Fourth District, holding that a juvenile was entitled to credit for time spent in predisposition custody against an indeterminate commitment. In addition to *E.C.* and *Jesus R.*, the court relied on its previous decision in *In re B.L.S.*, 325 Ill. App. 3d 96

(2001), that juveniles adjudicated as habitual offenders and sentenced to a determinate term pursuant to section 5–815(f) of the Act were entitled to predisposition credit. *In re Jermaine J.*, 336 Ill. App. 3d at 903-04.

In *B.L.S.*, the Third District reasoned that while the Act does not expressly provide for credit against commitment for the time a juvenile spends in predisposition detention, it does provide that juveniles shall have all of the procedural rights of adults in criminal proceedings, and that adults receive presentence custody credit against determinate sentences. The court further reasoned that denying juveniles credit for predisposition detention would contravene the spirit of section 5–710(7)'s provision that juveniles not be committed to the DOC for a period in excess of that period for which an adult would be committed for the same act. *In re B.L.S.*, 325 Ill. App. 3d at 99-100.

In affirming the decision in *B.L.S.*, this court noted that "[n]othing in the Code restricts [application of the credit against sentence requirement of] section 5–8–7(b) to adult offenders" and that there was "no rationale for denying a juvenile credit against a determinate sentence for time spent in predisposition custody." *In re B.L.S.*, 202 Ill. 2d 510, 518 (2002). Accordingly, we concluded that "the legislature intended that the rules for calculating the term of imprisonment for an offender sentenced to a determinate sentence are applicable to an habitual juvenile offender." *In re B.L.S.*, 202 Ill. 2d at 518.

We noted that this holding was consistent with *In re A.G.*, 195 Ill. 2d 313 (2001), wherein we held that compliance with Supreme Court Rule 604(d) was required in juvenile proceedings. In *A.G.*, we noted that recent amendments to the Act " 'represent[ed] a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law,' " and that " 'virtually all of the constitutional requirements of a criminal trial have been introduced into juvenile delinquency proceedings.' " *In re B.L.S.*, 202 Ill. 2d at 519, quoting *In re A.G.* 195 Ill. 2d at 317, 319.

In *In re K.S.*, the Fifth District followed the Third and Fourth Districts, holding that fundamental fairness required that minors committed to the DOC for an indeterminate term be given

predisposition credit. The court expressed its doubt as to the continuing validity of the reasoning in *J.J.M.* in light of this court's reasoning in *In re B.L.S. In re K.S.*, 354 Ill. App. 3d at 867.

As we noted in *B.L.S.*, public safety and punishment are now the overriding concerns of the juvenile justice system, and an incarcerated juvenile's liberty is restrained just as effectively as that of an adult offender. We can conceive of no reason why the rationale of *B.L.S.* should not apply to the present case. Accordingly, we hold that a juvenile who is committed to the DOC for an indeterminate term with the maximum sentence of a term of years not to exceed the period an adult would serve for the same offense is entitled to predisposition credit.

## IV. CONCLUSION

We hold that because J.T. failed to timely perfect an appeal from the order sentencing him to probation, the appellate court had no jurisdiction to consider the issue of whether the cause should be remanded for proper Rule 605 admonitions. We find that supervisory relief is not appropriate in this case, and that the issue of whether the trial court's sentencing order should be modified is moot. Finally, we hold that a juvenile who is committed to the DOC for an indeterminate term with the maximum sentence of a term of years not to exceed the period an adult would serve for the same offense is entitled to predisposition credit. For the foregoing reasons, the judgment of the appellate court is vacated.

*Appellate court judgment vacated*.

JUSTICE KILBRIDE, concurring in part and dissenting in part:

I concur in the majority opinion's conclusion that, under *People v. Jones*, 213 Ill. 2d 498 (2004), the appellate court lacked jurisdiction because J.T. failed to file a timely notice of appeal or request leave to file a late appeal. As noted by Justice Freeman in his dissent, *Jones* recognized, however, that specific situations may exist that dictate use of this court's to provide relief. Slip op. at 21 (Freeman, J., dissenting). I agree with Justice Freeman that when juveniles have no

other avenue to meaningful review, this court should exercise its supervisory authority to provide relief. I therefore dissent from that part of the majority opinion refusing J.T.'s request to use its supervisory authority to grant him relief.

This court determined in *William M.*, 206 Ill. 2d at 604-05, that a dismissal was too harsh a sanction for a juvenile's failure to comply with Rule 604(d) when the juvenile does not have an adequate alternative means for presenting his claims. Accordingly, this court exercised its supervisory authority and remanded the cause to the circuit court for strict compliance with Rule 604(d). *In re William M.*, 206 Ill. 2d at 604-05. This court should not ignore that juveniles may lose their right to appeal when the trial court provides incomplete and inaccurate admonishments, leaving minors with no means of raising their claims. Accordingly, fundamental fairness requires this court to exercise its supervisory authority to preserve the integrity of the juvenile justice system.

The mandates of Rule 605(c) should be strictly enforced. In *People v. Henderson*, 217 Ill. 2d 449 (2005), a case interpreting the admonishment requirements of Supreme Court Rule 605(a), I dissented from the majority opinion because the majority failed to consider the plain language of that rule in holding that strict compliance was not necessary. See *Henderson*, 217 Ill. 2d at 470 (Kilbride, J., dissenting). In *Henderson*, I noted that although the majority's analysis was supported by application of this court's holding in *People v. Davis*, 145 Ill. 2d 240 (1991), I believe the better approach is to follow the plain language of Rule 605(a). In my view, the same holds true for Rule 605(c), and this court should interpret our admonishment rules according to the plain language of those rules. Like Rule 605(a), the plain language of Rule 605(c) also mandates strict compliance, and the only fair remedy for failure to comply with the requirements of Rule 605(c) is to remand the cause to the trial court for proper admonishments.

Our rules of statutory construction apply with equal force to the interpretation of all supreme court rules. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998). The primary rule of statutory construction is to determine and give effect to the intent of the drafters of the rule. *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005). The best evidence of intent is the plain language used by the drafter. *King v. First Capital*

*Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005). When the drafter's intent can be determined from the plain language of the rule, this court must give that intent effect without resorting to other interpretive aids. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005).

The plain language of Supreme Court Rule 605(c) could not be more straightforward. The rule states the trial court "shall" advise defendants who enter into a negotiated plea of guilty of certain appeal rights and requirements. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(c), eff. October 1, 2001. The term "shall" indicates a mandatory obligation. See *Ramirez*, 214 Ill. 2d at 182; *People v. Jamison*, 181 Ill. 2d 24, 29 (1998) (interpreting Supreme Court Rule 605(b) to require strict compliance). Accordingly, the plain language of Rule 605(c) requires the trial court to give these admonitions in all cases when a defendant enters into a negotiated plea of guilty. This court should require strict compliance in accordance with the plain language of Rule 605(c).

As I stated in *Henderson*, "[s]uch a conclusion is further supported by this court's familiar maxim that '[t]he rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written.' " *Henderson*, 217 Ill. 2d at 471, quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). Strict compliance with the rules of this court is, thus, generally required. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 116 (2004).

As I further urged in *Henderson*, requiring strict compliance with our supreme court rules would have the benefit of easy application. As illustrated in the case before us, requiring strict compliance with these rules would alleviate this court's need to review an abundance of cases when the trial court obviously gave inadequate admonishments and to apply justice on an *ad hoc* basis.

In my opinion, the better course of handling cases when the trial court fails to comply strictly with the rule is to remand those cases to the trial court for proper admonishments. The defendant, here a juvenile, would then be allowed to request leave to withdraw the guilty plea to preserve the right to appeal. Again, this interpretation of Rule 605(c) would greatly simplify the process and eliminate unnecessary litigation on appeal. Because the plain language of Rule 605(c) requires strict compliance, this court should exercise its

supervisory authority and remand the cause to the trial court for proper admonitions in accordance with Supreme Court Rule 605(c).

In considering whether J.T. was prejudiced or denied real justice and, therefore, that "fundamental fairness" requires this court to grant supervisory relief, the majority concludes that J.T. "chose not to appeal because he was satisfied with his sentence." Slip op. at 7. That conclusion is mere conjecture and unsupported by the record.

Contrary to the majority's conclusion, J.T. has shown that he suffered prejudice as a result of the incomplete admonitions. First, the trial court simply told J.T. that all he needed to do was to "file a petition *** saying that you want to take everything back." The trial court failed to mention that if J.T. wanted to appeal his guilty plea, he would have to do something more than simply ask the court to "take everything back." Second, the trial court did not inform J.T. that, upon request of the State, any charges dismissed as a result of the plea would be reinstated. Third, the trial court stated that if J.T. could not afford a lawyer for his appeal, one would be provided for him, but did not tell him that counsel would be appointed to assist him with the preparation of the postplea motions. Fourth, the trial court did not inform J.T. that transcripts of the proceedings would be provided to assist in the preparation of the motions. Fifth, the trial court failed to inform J.T. that any issues not raised in his postplea motions would be waived on appeal. The trial court's incomplete admonishments prevented J.T. from having any meaningful understanding of the critical steps necessary to challenge his guilty plea. Contrary to the majority's conclusion, J.T. could not have properly asserted his right to appeal based on the admonishments he received.

Furthermore, J.T. would not have been aware of the procedure to file a late notice of appeal when he was never informed by the trial court that a notice of appeal was even necessary to seek review and was not informed of what procedures were required to begin the appellate process. There can be no question that J.T. has suffered prejudice and was denied real justice. This court should exercise its supervisory authority to grant him relief.

Although I disagree with the majority's refusal to exercise this court's supervisory authority and remand the cause for proper admonishments, I concur in the majority's decision not to address whether the Post-Conviction Hearing Act applies to juvenile

proceedings. This issue is simply not ripe for this court's consideration. First, J.T. has not attempted to file a postconviction petition, and any opinion this court might issue on the subject would merely be advisory. Additionally, it is not clear whether J.T. has standing to raise this issue. Therefore, the majority's decision to decline the opportunity to address the issue of whether the Post-Conviction Hearing Act applies to juveniles is justified.

Finally, I concur in the majority's conclusion that juveniles are entitled to predisposition sentencing credit.

For these reasons, I respectfully concur in part and dissent in part.


JUSTICE FREEMAN, dissenting:

A trial court accepted a minor respondent's admission without determining the factual basis of the admission, sentenced the minor respondent to probation, and gave him improper admonitions regarding his right to appeal. Upon revocation of the minor respondent's probation, the appellate court remanded the cause to the trial court for proper admonitions, in accordance with Supreme Court Rule 605(c) (188 Ill. 2d R. 605(c)). The majority vacates the judgment of the appellate court, holding that the appellate court lacked jurisdiction to require that the trial court properly admonish the minor respondent.

Faced with the minor respondent's loss of the right to a direct appeal, the majority declines to provide relief to the minor respondent through the use of the court's supervisory authority. The majority also refuses to address the minor respondent's argument that the Post-Conviction Hearing Act (725 ILCS 5/122–1 *et seq.* (West 2002)) should apply to juvenile proceedings, to provide juveniles an avenue for a collateral attack upon a trial court's finding of delinquency and imposition of sentence. The minor respondent is left without remedy in spite of his age, his lack of maturity, and his limited mental faculties. I cannot join in the majority's treatment of this minor respondent in particular, and in the majority's neglect of its responsibility to protect the rights of minors in general.


BACKGROUND

˘15˘

The minor respondent, J.T., was born on May 26, 1986. At the time of the admission in the present case, J.T. attended special education classes at Lyons Township High School, and was reported to have a full scale IQ of 69.

J.T. is a troubled young man who first came into the juvenile court system shortly after his tenth birthday. On August 16, 1996, J.T. entered an admission to possession of a stolen motor vehicle and theft. The trial court found that J.T. was a delinquent minor and placed him on two years of probation. A court psychologist later diagnosed J.T. as having impulsive ADHD, and severe conduct disorder. Thereafter, on November 13, 1996, the State filed a supplemental petition against J.T., alleging truancy. The trial court found that J.T. had violated his probation and ordered that he spend 15 days in home confinement. The State filed another supplemental petition against J.T. on December 10, 1996, alleging truancy and failure to cooperate with a gang intervention program. J.T. admitted to the violation and the trial court found him delinquent. The trial court placed J.T. on 18 months of probation, and appointed the Department of Children and Family Services (DCFS) as J.T.'s guardian. DCFS removed J.T. from his home and placed him at Allendale School for Boys, a group home for emotionally disturbed youth. At the time of placement, an Allendale psychologist confirmed the court psychologist's diagnoses. On March 10, 1998, J.T. entered an admission to a supplemental petition charging him with running away from Allendale and shoplifting, leading to a finding of delinquency and violation of probation, and an additional period of probation. Again, on October 2, 1999, J.T. entered an admission to a supplemental petition charging him with running away from Allendale, leading to a finding of delinquency and violation of probation, and to a sentence to one year of probation. On September 15, 2000, J.T. completed his term of probation, and the court terminated DCFS's guardianship.

The present case arose from a petition for adjudication of wardship that the State filed against J.T. on August 6, 2001. In the petition, the State alleged that, at 2:51 a.m. on July 26, 2001, J.T. committed the offense of criminal damage to property in that he knowingly damaged three windows and the aluminum siding of a residence in LaGrange, Illinois, with the damage being in excess of $300. A supplemental social investigation report prepared for the

disposition hearing provided the only details of the offense. The trial court did not review the factual basis for J.T.'s admission before accepting the admission and entering a finding of delinquency. Subsequently, at a disposition hearing on January 11, 2002, the trial court sentenced J.T. to 18 months of probation and 30 days in the Department of Corrections with a stay of mittimus, ordered that J.T. pay $373 in restitution, and ordered that J.T. undergo a T.A.S.C. evaluation for possible drug use. J.T. did not file a motion to withdraw his admission or to reconsider his sentence. In addition, J.T. did not file a notice of appeal from the trial court's finding of delinquency and imposition of sentencing.

On March 27, 2002, less than three months after the disposition hearing, the State filed a petition for supplemental relief alleging that J.T. had violated the terms of his probation by failing to attend school on several occasions.[1] At the conclusion of the hearing, the trial court found J.T. in violation of probation. Because of the prior findings of both substantive charges and violations of probation, the trial court determined that it was in the interest of the community to be protected from J.T.'s criminal behavior and committed him to the Department of Corrections. The following colloquy then took place:

> "[PUBLIC DEFENDER]: The minor is asking whether you will allow him to stay until after the holiday.
>
> THE COURT: Denied.
>
> THE DEFENDANT: Please, your Honor.

---

[1]The State filed several other petitions against J.T. in 2002. The trial court found J.T. not guilty of trespass to school property. The trial court also granted J.T.'s motion for directed verdict on a charge of burglary and entered a finding of not guilty. The State nol-prossed a petition alleging battery, mob action, and possession of drug paraphernalia. Lastly, the trial court struck the State's petition alleging criminal sexual assault with leave to reinstate, with J.T. demanding trial.

THE COURT: Nothing else.

THE DEFENDANT: I never ran. Please, your Honor.

THE COURT: He's been given every opportunity to cooperate, and he's thumbed his nose all during the six years I've had him.

Now, [J.T.], listen very carefully. You have a right to appeal this case, to have the Appellate Court look at it. And if you want to do that, you must file a petition within the next 30 days in the clerk's office at juvenile court because there was a hearing on it. And you have to file it within the next 30 days if you want it to go up on appeal. If you file it–

[J.T.], turn around. Turn around and face me. Your rights on appeal are as follows: You have 30 days to file that petition. If you file it, they're going to cause a transcript of the proceedings to be typed up; and it will be taken up to a higher court where they can look at the record to see whether I've made any errors in my judgement.

Do you understand that?

THE DEFENDANT: Yes, your Honor, but–

THE COURT: All right. Now, if you're unable to hire an attorney for that appeal, one will be appointed for you free of charge.

Do you understand that?

THE DEFENDANT: Yes, your Honor. I can't for Christmas, your Honor, please? I will come.

THE COURT: I have given you mercy for six years, [J.T.], and you haven't done anything.

THE DEFENDANT: I'm trying to go to Job Corp.

THE COURT: That's it. Thank you very much. You can take him, Mr. Sheriff.

THE DEFENDANT: Can I give my mom a hug?

[Public Defender]: I need a calculator to get credit.

THE COURT: You have 30 days to file an appeal.

THE DEFENDANT: Can I sit with my mother?

THE COURT: Not right this moment. You have to do it a right way. An appeal will be filed for you probably, [J.T.] so

just relax."

The trial court appointed the assistant director of the juvenile division of the Department of Corrections as temporary custodian and ordered that J.T. be taken directly into custody. The court committed J.T. to the Department of Corrections for an indeterminate term. J.T. appealed.

## ANALYSIS

As noted above, J.T. did not file a motion to withdraw his admission to the delinquency petition charging him with the offense of criminal damage to property. Neither did J.T. file a notice of appeal from the trial court's finding of delinquency and imposition of the sentence of probation. Rather, J.T. filed an appeal when the trial court found him in violation of probation and committed him to the Department of Corrections.

In the appellate court, J.T. noted that, in accepting his admission to criminal damage to property, the trial court did not inform him that the maximum sentence he could receive was three years in the Department of Corrections. See 705 ILCS 405/5–605(2)(a) (West 2002) ("a plea of guilty may be accepted when the court has informed the minor of the consequences of his or her plea and of the maximum penalty provided by law which may be imposed upon acceptance of the plea"). J.T. argued that his admission to the charge was not knowingly or voluntarily made because of the trial court's failure to admonish him properly, and he should be given an opportunity to withdraw the admission and plead anew. J.T. also noted that the trial court failed to inform him that in order to appeal his admission or his sentence he must first file a motion setting forth the reasons why he wanted to withdraw his admission; that counsel would be appointed to help him prepare the motion; that the hearing transcripts would be provided to assist him in the preparation of the motion; and that any claim of error not raised in the motion would be waived. J.T. argued in the alternative that the cause should be remanded so that he could receive proper admonitions and have an opportunity to file a motion to withdraw his admission. J.T. recognized that he did not file a postadmission motion in the trial court or file a notice of appeal, but maintained that the appellate court had jurisdiction to consider the issues because of the trial court's failure to give the required

admonitions to him.

The State moved to strike these issues from J.T.'s brief. The State noted that in a criminal case the sentence is the final judgment of the court. J.T. did not file a motion to withdraw his admission or a motion to reconsider his sentence within 30 days of the date the trial court imposed the sentence of probation, as required by Supreme Court Rule 604(d) (188 Ill. 2d R. 604(d)). J.T. also failed to file a notice of appeal within 30 days of the date the trial court sentenced him to probation, as required by Supreme Court Rule 606(b) (188 Ill. 2d R. 606(b)). Consequently, the State argued that the appellate court lacked jurisdiction to consider any issues related to J.T.'s admission and the sentence of probation.

There is no question that a minor's failure to file a motion to withdraw his admission or a motion to reconsider his sentence does not deprive an appellate court of jurisdiction on appeal. *In re William M.*, 206 Ill. 2d 595 (2003). Thus, J.T.'s failure to file a motion withdrawing his admission or a motion to reconsider his sentence of probation was not a jurisdictional bar to his appeal.[2] The question that remains is whether J.T.'s failure to file a notice of appeal within 30 days of the disposition hearing should serve as a bar to the appeal. In other words, should this court grant J.T. the right to review either by affirming the appellate court's judgment or by the use of this court's supervisory authority? Citing *People v. Jones*, 213 Ill. 2d 498 (2004), the majority first notes that, while the giving of improper admonitions constitutes error, a defendant may not attack a court's judgment at any time based upon such error. Slip op. at 4-5. The majority goes on to note that, in order to perfect an appeal, a defendant who has entered a guilty plea must file a notice of appeal preceded by a written motion to either withdraw his guilty plea or reconsider the sentence. The majority holds that since J.T. did not file a timely notice of appeal from the order sentencing him to probation, a written motion to either withdraw his plea or reconsider his

---

[2]In noting that J.T. did not file a motion to withdraw his admission or reconsider his sentence, as required by Rule 604(d), the majority nowhere discusses the holding of *In re William M.*, 206 Ill. 2d 595. I trust that the majority's failure to discuss *In re William M.* does not constitute a retreat from the case holding.

sentence, or a motion for leave to file a late notice of appeal, the appellate court could not consider any issues arising from either his guilty plea or his sentence. Slip op. at 5-6. Lastly, the majority refuses to use the court's supervisory authority to grant relief to J.T. Slip op. at 6-7.

As the author of *Jones*, 213 Ill. 2d 498, I agree that the appellate court lacked jurisdiction because J.T. failed to file a timely notice of appeal or request leave to file a late appeal. I note, however, the firm recognition in *Jones* that fundamental fairness, the need for the development of a uniform body of law, and the court's responsibility to administer the judicial system may dictate the use of the court's supervisory authority to provide relief in specific circumstances. See *Jones*, 213 Ill. 2d at 506-07 (observing: "the numerous conflicting opinions among the districts, would have led us to address the issue under our supervisory authority, which is an approach this court has taken in the past in postconviction cases where an issue is raised on appeal that had not been included in the initial petition"); *People v. Davis*, 156 Ill. 2d 149, 160 (1993) (reaching issue not raised in postconviction petition under supervisory authority). In the present case, J.T.'s personal circumstances, as well as the systemic differences between juveniles and adult defendants mandate the use of supervisory authority to provide J.T. the right to meaningful review.

First, the trial court did not admonish J.T. properly regarding his right to appeal, as required by Supreme Court Rule 605(c) (188 Ill. 2d R. 605(c)). The admonitions the trial court gave J.T. were substantially deficient in that the trial court:

> (1) failed to advise J.T. that the court could appoint an attorney to help him with the preparation of the postadmission motions;

> (2) failed to advise J.T. that a copy of the transcript would be provided to him without cost to help him in the preparation of the postadmission motions;

> (3) failed to advise J.T. that he was required to state the grounds for the withdrawal of the admission to the petition in the motion to withdraw;

> (4) failed to advise J.T. that any grounds not raised in the motion to withdraw the admission would be waived; and

˘21˘

(5) failed to advise J.T. that the State could reinstate charges against him that were dismissed as part of the plea negotiations.

As the appellate court noted, "[t]rial courts are held to strict compliance with Rule 605(c) requirements. [Citation.] Although the trial court is not required to use the exact language of the rule, the admonitions are insufficient where the trial court leaves out the substance of the rule." 347 Ill. App. 3d at 536. I agree also with the appellate court's observation regarding the trial court's failure to advise J.T. to state the grounds for the withdrawal of the admission:

"Had J.T. followed the trial court's admonishments, his motion to withdraw would have been subject to dismissal and would have precluded the consideration of any issue on appeal. This is especially true in this case where J.T. was not advised that he could have the assistance of counsel in preparing his postplea motions." 347 Ill. App. 3d at 537.

Second, the trial court did not ascertain the factual basis for J.T.'s admission *upon acceptance of the admission*. Section 5–605 of the Juvenile Court Act dictates that "*[u]pon acceptance of a plea of guilty*, the court shall determine the factual basis of a plea." (Emphasis added.) 705 ILCS 405/5–605(2)(a) (West 2002). The trial court did not do so, however. I note the paucity of information in the record regarding the charge against J.T. The petition for adjudication of wardship states that J.T. "committed the offense of Criminal Damage to Property in that he knowingly damaged the property of George Kages, three house windows, and house aluminum siding in the residence located at 345 S. Peck, LaGrange, Cook County Illinois without George Kages' permission, said damage being in excess of $300.00 in violation of Chapter 720 ILCS act 5 subsection 21–1(1)(a)." A supplemental social investigation report prepared by the probation officer for the trial court's use at the *disposition hearing* adds details from the police investigation of the offense. Apart from J.T.'s admission, the record of the proceedings at the plea hearing does not confirm either that J.T. intentionally fired a BB gun at the house windows and aluminum siding or that J.T. caused damage to the property in excess of $300.

Third, J.T.'s counsel may have provided him ineffective assistance in failing to petition the appellate court for leave to file a

late appeal. The trial court placed J.T. on probation at the disposition hearing on January 11, 2002. On March 27, 2002, less than three months after the disposition hearing, the State filed a petition for supplemental relief alleging that J.T. had violated the terms of his probation by failing to attend school. At that time, J.T.'s counsel could have petitioned the appellate court for leave to file a late appeal. See 188 Ill. 2d R. 606(c) (providing that upon motion filed in the reviewing court within six months of the expiration of the time for filing the notice of appeal the reviewing court may grant leave to appeal). J.T.'s counsel failed to do so, however. In this regard, I note the State's persistent argument in its opening and reply briefs that if J.T. truly wished to challenge his guilty plea, his proper remedy lay in a late notice of appeal. The State notes that J.T. participated in five court hearings within the extended time to file a late notice of appeal, and could have asked counsel to file a late appeal. Particularly in light of the improper admonitions by the trial court, I am less confident than the State that J.T., an emotionally disturbed minor and special education student with a reportedly low IQ, could have understood the intricacies of our Rule 606(c) and directed his counsel to file a late appeal of the sentencing order placing him on probation.

The trial court's failure to admonish J.T. properly regarding his right to appeal the order placing him on probation, coupled with counsel's failure to seek leave to file a late appeal on J.T.'s behalf, effectively deprived J.T. of his constitutional right to a direct appeal. Ill. Const. 1970, art. VI, §6. In a proceeding where the trial court failed to determine the factual basis for an admission upon acceptance of the admission, J.T. should not be denied the right to any review. I also note appellate counsel's argument that J.T.'s admission was not knowing and voluntary because of the trial court's failure to admonish J.T. regarding the consequences attendant to the admission.

J.T. invokes the court's supervisory authority and seeks leave to file a late notice of appeal in the appellate court or a remand to the trial court for proper admonitions and an opportunity to withdraw his guilty plea. I note support in our case law for allowing J.T. to file a late notice of appeal. Thus, in *People v. Creek*, 94 Ill. 2d 526 (1983), the court reversed the judgment of the appellate court dismissing the defendant's appeal as untimely and remanded with directions to afford the defendant review on the merits. The court noted that on the

day the trial court denied the defendant's last posttrial motion, an appellate court opinion erroneously reversing the defendant's conviction had been filed. Consequently, the defendant had no adverse judgment from which he could appeal until this court reversed the appellate court's judgment. The defendant filed his appeal from the denial of the posttrial motions within 30 days of the judgment reversing the appellate court, said date, however, being approximately a year after denial of the defendant's posttrial motions. The court noted although the appellate court's reversal of the defendant's conviction proved to be erroneous, the defendant justifiably relied on that decision. The defendant had a constitutionally granted right to appeal the judgment of the trial court within 30 days from the date of the denial of his last posttrial motion. Dismissing the defendant's appeal "as untimely when the sole reason for delay lies in judicial error might well violate the due process guarantees of both our own and the Federal constitutions." *Creek*, 94 Ill. 2d at 531.

In *People v. Pitsonbarger*, 205 Ill. 2d 444 (2002), petitioner filed a postconviction petition pursuant to the Post-Conviction Hearing Act. The circuit court dismissed the petition without an evidentiary hearing, finding the claims therein either barred by *res judicata* or waived. Petitioner's counsel filed a motion to reconsider and vacate in May 1992. The circuit court denied the motion almost 11 months later. The clerk of the court did not give notice of this decision to petitioner's counsel. When counsel filed a motion to file late notice of appeal in November 1993, the motion was granted. See also *People v. Fikara*, 345 Ill. App. 3d 144 (2003); *People v. Young*, 14 Ill. App. 3d 595 (1973).

I also note support in our case law for a remand where the trial court has failed to admonish a defendant properly. In *People v. Foster*, 171 Ill. 2d 469 (1996), the defendant failed to file a motion for reconsideration of a sentence in violation of Rule 604(d). In remanding for strict compliance with Rule 604(d), the court considered the effect of the trial judge's failure to admonish the defendant regarding his right to appeal:

> "Defendant next contends that the trial judge's failure to follow the dictates of Rule 605(b) excuses his noncompliance with Rule 604(d). Since a defendant's failure to comply with the written-motion requirements of Rule 604(d) can result in

the loss of the right to direct appeal, this court adopted Rule 605(b) as a necessary corollary to Rule 604(d). [Citation.] Rule 605(b) mandates that trial judges admonish defendants regarding the requirements of Rule 604(d), thus ensuring that the ramifications of noncompliance comport with due process. [Citation.] Having been instructed regarding Rule 604(d)'s mandates, a defendant cannot then argue procedural unfairness when he suffers the ramifications of his noncompliance.

The instant trial judge, however, failed to issue the Rule 605(b) admonitions regarding Rule 604(d). Consequently, we must determine whether this impacts our holding in *Wallace* that the appellate court must dismiss the appeal of a post-guilty-plea sentence where the defendant fails to first file a written motion for reconsideration with the trial court. [*People v. Wallace*, 143 Ill. 2d 59, 61 (1991).] Defendant asks this court to adopt the 'admonition exception' applied by several panels of our appellate court. ***

We agree with those appellate decisions that have applied the admonition exception. Rule 605(b) serves to ensure, *inter alia*, that a defendant knows of Rule 604(d)'s requirements regarding appeals from sentences imposed upon a plea of guilty. Where such admonitions have not been issued, it would violate procedural due process rights to hold a defendant responsible for noncompliance with the strictures of Rule 604(d). Accordingly, we hold that where a trial court has failed to issue Rule 605(b) admonitions, the appellate court may entertain an appeal from a sentence despite defendant's noncompliance with the written-motion requirement of Rule 604(d)." *Foster*, 171 Ill. 2d at 472-73.

See also *People v. Jamison*, 181 Ill. 2d 24, 30 (1998) (the trial judge did not substantially advise the defendant in accordance with Rule 605(b)), and it was necessary to remand the cause to the circuit court so that the defendant could be given correct admonitions and allowed the opportunity to withdraw his guilty plea where "the trial judge had ordered defendant only to 'file any post-trial motions within thirty days of this date' ").

I cannot stress enough that J.T. was an emotionally disturbed youth with a full scale IQ of 69 who was improperly admonished by

the trial court regarding his right to appeal the order placing him on probation. His lack of maturity and sophistication is exemplified by the colloquy noted above where J.T. seemed more concerned with the fact that he would not spend Christmas at home than with the fact that he was being committed to the Department of Corrections for a period of five years. Certainly, J.T.'s personal circumstances advocate strongly for the use of supervisory authority to provide him meaningful review.

The majority turns a deaf ear to J.T.'s circumstances. There are, however, systemic differences between juveniles and adult defendants which also advocate for the use of the court's supervisory authority. As the majority notes, the defendant in *Jones* entered a negotiated plea of guilty to murder. He did not avail himself of his right to a direct appeal of his conviction and sentence. Rather, 19 months after his conviction and sentence, he filed a petition for postconviction relief alleging ineffective assistance of counsel. The trial court dismissed the *pro se* postconviction petition. On appeal from the dismissal of the postconviction petition, the defendant argued for the first time that the trial court had failed to admonish him properly when the court entered judgment on the guilty plea. It is evident that the defendant in *Jones* was an adult who had made use of an avenue of appeal by filing a petition under the Post-Conviction Hearing Act. Although the defendant in *Jones* had an opportunity to raise the issue of improper admonitions by including the issue in his postconviction petition, he failed to do so. Principles of waiver applied on appeal to bar his argument that the trial court had failed to properly admonish him. See 725 ILCS 5/122–3 (West 2000) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived"). In contrast, J.T. is a juvenile who is seeking an initial review of the proceedings in which he entered his admission. The majority does not give any consideration to J.T.'s minority or determine whether his status as a juvenile argues for the use of supervisory authority to afford him relief.[3]

---

[3]I note with curiosity the majority's claim that the record demonstrates J.T.'s familiarity with the criminal justice system. J.T., no doubt, had appeared in court on several occasions prior to the disposition hearing in the case at bar. However, these court appearances stemmed from a delinquency petition filed shortly after J.T.'s tenth birthday. Further, the original

delinquency petition and the subsequent petitions filed by the State resulted in admissions by J.T., with no intimation in the record that J.T. ever appealed. Thus, the record provides no support to the view that J.T. was familiar with his right to appeal the sentence of probation that the trial court entered at the disposition hearing.

The majority's reliance on *Jones* is surprising in light of the fact that the majority refuses to address J.T.'s argument that the Post-Conviction Hearing Act (725 ILCS 5/122–1 *et seq.* (West 2002)) should apply to juvenile proceedings, to provide juveniles an avenue for a collateral attack upon a trial court's finding of delinquency and imposition of sentence. In his brief on appeal, J.T. notes that this court has not yet determined whether the Post-Conviction Hearing Act applies to juvenile proceedings. Citing *People v. Wilk*, 124 Ill. 2d 93 (1988), J.T. also notes the court's failure to resolve the issue leaves minors without a vehicle to pursue the vindication of their rights on postconviction review. In an exhaustive discussion, J.T. then explains the rationale of the appellate court opinions that have denied juveniles a postconviction remedy; reviews the changes in the purposes and policies of the Juvenile Court Act (705 ILCS 405/5–101 *et seq.* (West 2002)); and examines various provisions of the Juvenile Court Act to illustrate the punitive nature of the act. J.T. concludes that the changes in the purposes and policies of the Juvenile Court Act have rendered the rationale for not extending the protections of the Post-Conviction Hearing Act to juveniles inapposite. In its response, the State focuses on whether the trial court's failure to admonish a juvenile properly is an error recognizable under the Post-Conviction Hearing Act. The State argues that the error is not of constitutional magnitude and, consequently, the juvenile is not entitled to relief under the Post-Conviction Hearing Act.

In *In re A.G.*, 195 Ill. 2d 313 (2001), this court had its initial encounter with the question of the applicability of the Post-Conviction Hearing Act to juvenile proceedings. The respondent entered an admission to certain charges in exchange for the dismissal of others. After receiving a factual basis for the admission, the trial court found the respondent to be a delinquent minor and committed him to the Department of Corrections. The respondent's counsel filed a motion to reconsider the disposition but did not file a certificate pursuant to Rule 604(d). The trial court denied the motion to reconsider and the respondent appealed. In the appellate court, the respondent requested that the cause be remanded to the circuit court for proceedings consistent with Rule 604(d). The appellate court did not reach the merits of the cause, but instead remanded to the trial court for strict compliance with Rule 604(d).

In this court, the State argued that Rule 604(d) should not be applied to juvenile proceedings. In rejecting the State's argument, the

court initially considered the nature of the changes to the Juvenile Court Act. The court observed:

"[T]he Juvenile Court Act has been significantly amended since this court's decision in *In re Beasley*. Although proceedings under the Act are still not criminal in nature and are to be administered in a spirit of humane concern for, and to promote the welfare of, the minor (*In re Beasley*, 66 Ill. 2d at 389), article V of the Act has been reconfigured and now contains a purpose and policy section which represents a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law. 705 ILCS 405/5–101 (West 1998); *In re G.O.*, 191 Ill. 2d 37, 61 (2000) (Heiple, J., dissenting). The General Assembly has now specifically set forth the purpose and policy of the Juvenile Court Act as it relates to delinquent minors as follows:

'It is the intent of the General Assembly to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively. To effectuate this intent, the General Assembly declares the following to be important purposes of this Article:

(a) To protect citizens from juvenile crime.

(b) to hold each juvenile offender directly accountable for his or her acts.

***

(d) To provide due process, as required by the Constitutions of the United States and the State of Illinois, through which each juvenile offender and all other interested parties are assured fair hearings at which legal rights are recognized and enforced.' 705 ILCS 405/5–101(1) (West 1998).'

In addition to the above-mentioned purpose and policy of the Act, we note that virtually all of the constitutional requirements of a criminal trial have been introduced into juvenile delinquency proceedings. These due process

safeguards include the right to adequate notice of charges, the right to counsel, the right to remain silent, and the right to confront and cross-examine witnesses. [Citation.] Further, the reasonable doubt standard of proof and the rules of evidence used at criminal proceedings are applicable at the adjudicatory hearing and in consideration of whether the minor is delinquent. [Citation.] In fact, the Act specifically provides that with the exception of the right to a jury trial, minors shall have '*all the procedural rights of adults in criminal proceedings*' unless specifically excluded by laws enhancing the minor's protection. (Emphasis added.) 705 ILCS 405/5–101(3) (West 1998)." *In re A.G.*, 195 Ill. 2d at 317-19.

The court then considered the advantages to a minor in the application of Rule 604(d) to juvenile proceedings:

"The State is mistaken in its assertions that Rule 604(d) would not be useful in the context of delinquency proceedings and would not provide any due process protections. Rule 604(d) is designed to protect due process rights and to eliminate unnecessary appeals. [Citation.] Compliance with the motion requirement of Rule 604 permits the trial judge who accepted the plea and imposed sentence to consider any allegations of impropriety that took place *dehors* the record, and correct any error that may have led to the guilty plea. [Citation.] Requiring the defendant's counsel to file the requisite certificate enables the trial court to ensure that counsel has reviewed the defendant's claim and has considered all relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence." *In re. A.G.*, 195 Ill. 2d at 320-21.

Having reviewed the salutary effects of Rule 604(d), the court next recognized the absence of a definitive ruling on the applicability of the Post-Conviction Hearing Act to juvenile proceedings. The court concluded:

"[A]pplication of the rule to juvenile proceedings is particularly important given that this court has not reviewed holdings of the appellate court concluding that relief from such proceedings is unavailable under the Post-Conviction Hearing Act. See, *e.g.*, *In re A.W.H.*, 95 Ill. App. 3d 1106,

1107 (1981); *In re R.R.*, 75 Ill. App. 3d 494, 496 (1979). Accordingly, we hold that compliance with the Rule 604(d) certificate requirements is required in juvenile proceedings." *In re A.G.*, 195 Ill. 2d at 321-22.

*In re William M.*, 206 Ill. 2d 595, presented another opportunity for the court to determine whether the Post-Conviction Hearing Act applies to juvenile proceedings. The court recognized that an attorney who fails to adhere to Rule 604(d), despite hearing the admonishments required by Rule 605(b), falls short of providing competent representation to the defendant. Further, the defendant is deprived is of his right to appeal through no fault of his own. In the context of adult defendants, the appeal may be dismissed because the defendant can raise his claims in a postconviction petition. The court opined, however, that the dismissal of a juvenile's appeal for failure to comply with the requirements of Rule 604(d) would be too harsh a sanction. Such a dismissal might leave a juvenile without a remedy for his claims because the right of a juvenile to file a petition under the Post-Conviction Hearing Act has not been established.

In my separate opinion in *In re William M.*, I urged the court to decide whether the Post-Conviction Hearing Act applies to juvenile proceedings. *In re William M.*, 206 Ill. 2d at 610 (Freeman, J., concurring in part and dissenting in part, joined by McMorrow, C.J., and Rarick, J.). If the court were to decide that the Post-Conviction Hearing Act applies to juvenile proceedings, William M. would have an adequate remedy under the Post-Conviction Hearing Act, and his appeal could be dismissed just as an appeal by an adult defendant is subject to dismissal. If the court were to decide that the Post-Conviction Hearing Act does not apply to juvenile proceedings, William M. would not have an adequate remedy for his claims, and dismissal of his appeal would be too harsh a sanction to impose. I suggested that the majority erred in assuming, without analysis or citation to authority, that the Post-Conviction Hearing Act does not apply to juvenile proceedings, and does not provide an adequate remedy for the juvenile in the case at bar. The majority's assumption affected the very outcome of the case and was therefore contrary to principled judicial review. See also *In re William M.*, 206 Ill. 2d at 608-09 (McMorrow, C.J., concurring in part and dissenting in part, joined by Freeman and Rarick, JJ.) ("It should be apparent that resolution of the appeal in the case at bar is dependent on deciding whether the Post-Conviction Hearing Act applies to juvenile

proceedings. For this reason, the court has no discretion to avoid addressing the issue. The issue needs to be confronted head on"). And see *In re William M.*, 206 Ill. 2d at 607-08 (Kilbride, J., specially concurring) ("[O]ur statement that 'a juvenile does not have an adequate means for presenting his claims when his attorney fails to file a written motion pursuant to Rule 604(d)' merely acknowledges the absence of any precedential authority supporting the conclusion that juveniles such as the respondent have a viable means of appellate redress. [Citation.] It neither creates an inherent conflict with our prior statements nor necessarily relies on an implicit assumption that the Post-Conviction Hearing Act is inapplicable in juvenile proceedings").

Having failed to address an issue of great import to juveniles, the majority in *In re William M.*, nonetheless fashioned a remedy for the minor by remanding for further proceedings in compliance with Rule 604(d). In the case at bar, the majority abdicates all responsibility to decide the controversial issue and also fails to provide any relief to J.T. The majority states

> "Alternatively, J.T. requests this court to exercise its supervisory authority and address the issue of whether juveniles can seek relief under the Post-Conviction Hearing Act (725 ILCS 5/122–1 *et seq.* (West 2004)). We decline to do so for the same reasons we declined to address this issue in *In re William M.*, 206 Ill. 2d 595 (2003). As in *William M.*, the parties offer minimal argument on this issue." Slip op. at 7.

In my review of the majority opinion in *In re William M.*, I was not able to find *any stated reasons* for the majority's failure to decide whether the Post-Conviction Hearing Act applies to juvenile proceedings. Moreover, contrary to the majority's assertion, the briefs contain extensive discussion as to whether the Post-Conviction Hearing Act should apply in the circumstances at bar. I note that the court itself laid the foundation for a decision on the issue in its thorough discussion of the Juvenile Court Act and the attributes of criminal proceedings in *In re A.G.*, 195 Ill. 2d at 313. Lastly, there is a crucial difference between *In re William M.*, and the case at bar. Although the majority in *In re William M.* did not determine whether the Post-Conviction Hearing Act applies to juvenile proceedings, the court provided relief to the minor *by remanding the cause to the*

*circuit court for strict compliance with Rule 604(d).* See *In re William M.*, 206 Ill. 2d at 604-05. Indeed, had the court addressed the issue and determined that the Post-Conviction Hearing Act applies to juvenile proceedings, the court would have dismissed the appeal, and the minor would have had to file a petition for relief under the Post-Conviction Hearing Act. See *In re William M.*, 206 Ill. 2d at 604. While today's majority likewise fails to determine whether the Post-Conviction Hearing Act applies to juvenile proceedings, it does so without providing *any relief* to J.T.

In my opinion, the changed climate in the treatment of minors in the juvenile court system advocates strongly for the application of the Post-Conviction Hearing Act. The majority also fails to exercise the court's supervisory authority to provide relief to J.T. Instead, the majority cobbles together a decision which effectively denies J.T. any avenue of redress for his claims.

CONCLUSION

I agree with the majority that the appellate court lacked jurisdiction to consider J.T.'s appeal. I am deeply troubled, however, by the majority's treatment of J.T. in particular and juveniles in general. The majority fails to take into consideration J.T.'s minority, his lack of maturity, and his limited mental faculties. Faced with decidedly improper admonitions given by the trial court to J.T. as to his right to appeal, the majority demands that J.T. have fully complied with our rules of appellate procedure. The majority dismisses J.T.'s appeal, observing that while the "admonitions did not strictly comply with Rule 605(c), they were sufficient to put J.T. on notice that he could challenge his guilty plea, and that *some action on his part* within 30 days was necessary if he wished to appeal." (Emphasis added.) Slip op. at 6. I note that Rule 605(c) is a necessary corollary to Rule 604(d), and mandates that trial judges admonish defendants regarding the requirements of Rule 604(d), thus ensuring that the ramifications of noncompliance comport with due process. See *Foster*, 171 Ill. 2d at 472. Certainly the Rule 605(c) admonitions should not be reduced to notice that "*some action*" on the part of the defendant is necessary to perfect an appeal. See *Jamison*, 181 Ill. 2d at 30 (admonition " 'to file any post-trial motions within thirty days' " was substantially deficient). The majority's indifference to J.T.'s plight contrasts sharply with its solicitude for the adult defendants in

*Foster* and *Jamison* who failed to perfect their appeals because of improper admonitions given by the trial court.

As this court recognized in *In re A.G.*, 195 Ill. 2d 313, there have been significant changes in the Juvenile Court Act. See also *In re J.W.*, 204 Ill. 2d 50, 69 (2003); *In re B.L.S.*, 202 Ill. 2d 510, 519 (2002); *In re G.O.*, 191 Ill. 2d 37, 61 (2000) (Heiple, J., dissenting). The amendments to the Act "represent[ ] a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law." *In re A.G.*, 195 Ill. 2d at 317, citing *In re G.O.*, 191 Ill. 2d at 61 (Heiple, J., dissenting). Concurrent with the shift in the purposes and policies of the Juvenile Court Act has been a shift in the court's treatment of juvenile offenders. As the court noted in *In re A.G.*, "virtually all of the constitutional requirements of a criminal trial have been introduced into juvenile delinquency proceedings." *In re A.G.*, 195 Ill. 2d at 318, citing *In re W.C.*, 167 Ill. 2d 307, 320-21 (1995). See also *In re B.L.S.*, 202 Ill. 2d 510 (holding that the juvenile offender is entitled to receive credit for time spent in custody prior to sentencing–the juvenile's liberty is restrained just as effectively as that of an adult offender). The court's consideration of juvenile issues remains incomplete, so long as the majority refuses to determinate whether the Post-Conviction Hearing Act applies to juvenile proceedings.

Juveniles are a vulnerable population. As the United States Supreme Court observed in *Eddings v. Oklahoma*, 455 U.S. 104, 115-16, 71 L. Ed. 2d 1, 11-12, 102 S. Ct. 869, 877 (1982),

> "youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage. Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults. Particularly 'during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment' expected of adults. *Bellotti v. Baird*, 443 U.S. 622, 635 (1979)."

Scientific and sociological studies "tend to confirm, '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-

considered actions and decisions.' " *Roper v. Simmons*, 543 U.S. 551, 569, 161 L. Ed. 2d 1, 21, 125 S. Ct. 1183, 1195 (2005), quoting *Johnson v. Texas*, 509 U.S. 350, 367, 125 L. Ed. 2d 290, 306, 113 S. Ct. 2658, 2668-69 (1993). It is the youth's lack of maturity and experience, impetuosity, and ill-considered decisions which mandate special consideration by the court in determining the protections available to minors in juvenile proceedings, and the avenues for review and relief where the minor's rights are violated.

"Even the normal 16-year-old customarily lacks the maturity of an adult." *Eddings*, 455 U.S. at 115-16, 71 L. Ed. 2d at 12, 102 S. Ct. at 877. At the time of sentencing, J.T. was several months shy of his sixteenth birthday. He was an emotionally disturbed youth with a full scale IQ of 69. The majority does him disservice by failing to take his circumstances into consideration, and failing to provide him relief through the court's supervisory authority. Further, the majority abdicates its responsibility to protect the rights of juveniles in general by failing to determine whether the Post-Conviction Hearing Act applies to juvenile proceedings. I respectfully dissent.